# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| DEBORAH AL, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br> v.<br><br>VAN RU CREDIT CORPORATION,<br><br>    Defendant. | Case No.: 17-cv-1738<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Deborah Al is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes, namely a personal credit card debt.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction.

6. Defendant Van Ru Credit Corporation ("Van Ru") is a foreign business corporation with its primary offices located at 1350 E. Touhy Avenue, Suite 300E, Des Plaines, Illinois 60018. Its registered agent in Wisconsin is Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

7. Van Ru is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Van Ru is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Van Ru is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10. Van Ru is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or around March 10, 2017, Van Ru mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "Monroe & Main." A copy of this letter is attached to this complaint as Exhibit A.

12. The alleged debt identified in Exhibit A was for an alleged open-end, store credit account with Monroe & Main, a merchant affiliated with Colony Brands.

13. The alleged debt identified in Exhibit A was incurred only for personal, family or household purposes, namely, use of a personal credit card.

14. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

2

15. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

16. Exhibit A represents that the "balance" of Plaintiff's account was $462.31 when Exhibit A was mailed.

17. Exhibit A contains the following text:

> You can settle your account with the above client for less than the full amount you owe.
>
> The balance you owe as of the date of this letter is $462.31. Presently, we are willing to accept $277.39 to settle your account, provided that you act promptly. We are not obligated to renew this offer.

Exhibit A.

18. Exhibit A does not define promptly.

19. Exhibit A also states that Van Ru is "not obligated to renew this offer."

20. Exhibit A does not otherwise provide a settlement expiration date.

### *FDCPA Violations*

21. The statement in Exhibit A: "Presently, we are willing to accept $277.39 to settle your account, provided that you act promptly," is false, deceptive, misleading, and confusing and to the unsophisticated consumer. Such broad, open-ended language is inherently confusing to the consumer and an unfair collection practice.

22. The term "promptly" could have any number of meanings. For example, "promptly" may mean a few days to one person and several months to another.

23. In the absence of an expiration date or other indication of what Van Ru or Monroe & Main mean by the term "promptly," and alongside a statement that the debt collector is "not obligated to renew this offer," the unsophisticated consumer would understand the statement that "we are willing to accept $277.39 to settle your account, provided that you act promptly," to mean that Van Ru could, and would, rescind the settlement offer at any time and without notice.

3

24. The consumer has no way to know from <u>Exhibit A</u> whether Van Ru and/or the creditor would treat a payment of the purported "settlement" amount as an actual settlement (i.e. releasing Plaintiff from any remaining liability) of the alleged debt.

25. Van Ru's language leaves open the possibility that the consumer will make a payment of the offered amount, $277.39, only to be informed that the offer has already expired and Van Ru will continue to collect on the remaining balance.

26. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to an "unsatisfied" settlement, however, Merchants could continue to collect the remaining balance – 40% – of the alleged debt, plus any additional interest that had accrued.

27. An unsophisticated consumer would interpret the statement that she must tender payment "promptly" to mean that, "if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount . . . ." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007), but the consumer would have no idea what the purported deadline is.

28. A false statement that a settlement offer is only available for a limited time is a material false statement because it imparts a false belief in the unsophisticated consumer that he or she must hurry to take advantage of the limited-time opportunity, when in reality, there is no such time limit. *See Nelson-McGourty v. L. & P Fin. Adjusters, Inc.*, 2010 U.S. Dist. LEXIS 81819, *44 (N.D. Ill. Aug. 12, 2010); *see also Ozkaya v. Telecheck Servs.*, 982 F. Supp. 578, 584

(N.D. Ill. Oct. 23, 1997); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007).

29. In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d 769 at 775-76.

30. While <u>Exhibit A</u> includes this safe-harbor language, without an expiration date, the language does not have its intended effect.

31. As a practical matter, the unsophisticated consumer is not an FDCPA lawyer. She does not know that the purpose of the statement that "we are not obligated to renew this offer" is to make her "realize that there is a renewal possibility but that it is not assured," in the context of a settlement offer with an express expiration date or range (*eg.* "30 days from receipt of this letter").

32. Where the debt collector states that payment must be made "promptly" and does not include an expiration date by which payment must be made, the unsophisticated consumer would not understand the statement that "we are not obligated to renew this offer" to mean that she could settle the debt for the same amount, or possibly less, at any time.

5

33. The unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language if it will rescind the offer.

34. In the absence of an expiration date and alongside a statement that the debt collector is "not obligated to renew this offer," the unsophisticated consumer would interpret Van Ru's statement that the settlement payment must be made "promptly" as an implied threat to revoke the settlement offer at any time and without notice.

35. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion. *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor . . . for the kind of suit Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

36. Moreover, Van Ru's failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer. *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already

6

passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

38. The unsophisticated consumer, being told she must pay "promptly" to take advantage of the settlement agreement, while also being told that the settlement offer expires at an undefined time and may not be renewed, would feel intimidated into paying immediately. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

38. Plaintiff was deceived, misled, and confused by Exhibit A.

39. The unsophisticated consumer would be deceived, misled, and confused by Exhibit A.

40. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

41. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

42. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers'

7

allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

43. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

44. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

46. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

### The WCA

48. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

49. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

9

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

50. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

51. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

52. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

53. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

54. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

55. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

56. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

57. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

58. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. Exhibit A includes an offer that is misleading as to when the offer expires.

61. The term "promptly" in the context of the settlement offer is ambiguous, misleading and confusing.

62. A consumer who mails a payment in the full amount of the "settlement amount" listed on the letter, on or near the deadline on the letter, may not have actually settled the claim if Van Ru decides, on its own whim, that the offer expired prior to the payment.

11

63. A consumer who receives a letter that includes a "Limited Time" settlement offer that does not contain an expiration date would be deceived, misled, and confused about the deadline for acceptance, which is a material term of the offer. *See Smith*, 2017 U.S. Dist. LEXIS 47701 at *14.

64. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT II – FDCPA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Exhibit A includes false statements that mislead consumers to believe that any settlement offer made is a limited time offer and failure to accept the offer before its "expiration" would result in the debtors' inability to settle the debt for less than the full amount. *Evory*, 505 F.3d at 775-76.

67. Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

## COUNT III – FDCPA

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. Exhibit A includes threats to revoke the settlement offers at any time and without notice even though neither Van Ru nor the creditor intended to revoke these offers.

70. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT IV – WCA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Van Ru is a licensed Collection Agency.

73. Van Ru's conduct violates the FDCPA. Wis. Admin. Code DFI-Bkg 74.16(9).

74. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

75. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between December 13, 2016 and December 13, 2017, inclusive, (e) that was not returned by the postal service.

76. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

77. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

78. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

79. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

80. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

81. Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: December 13, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com