# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DEBORAH AL,

              Plaintiff,

v.

VAN RU CREDIT CORPORATION,

              Defendant.

Case No. 17-CV-1738-JPS

**ORDER**

        Plaintiff allegedly owed a debt to "Monroe & Main," through which she had earlier opened a store credit card. (Docket #1 at 2). Defendant sent her a letter attempting to collect that debt on March 10, 2017 (the "Letter"). (Docket #1-1 at 2–3). The Letter states, in pertinent part:



*Id.* at 2. The Letter does not define "promptly" and does not state a firm expiration date for the settlement offer. *Id.* Plaintiff's overarching theory of liability is that failing to include a better description of the parameters of the settlement offer misleads the recipient into believing that the offer may shortly expire, when this is not true. (Docket #1 at 3–7). She maintains that the Letter thereby violates the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act ("WCA"). *Id.* at 11–14.

        Plaintiff brought this lawsuit as a class action on the theory that Defendant sent an identical letter to many other people. *Id.* at 13. This belief

was borne out in discovery; 180 people received similar correspondence. (Docket #31-4 at 7). On July 5, 2018, Plaintiff filed a motion for class certification. (Docket #29).[1] Plaintiff proposes that the Court certify the following class: "(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt allegedly owed for personal, family or household purposes, (d) between December 13, 2016 and December 13, 2017, (e) that was not returned by the postal service." *Id.* at 1.

Federal Rule of Civil Procedure ("FRCP") 23 governs the maintenance of class actions. For her case to be eligible for class treatment, Plaintiff must first show that

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). Plaintiff bears the burden to prove, by a preponderance of the evidence, that each of these requirements are met.

---

[1]Plaintiff has two other class certification motions pending. The first was filed along with the complaint. (Docket #3). She was all but required to file the motion at that time because, under existing precedent, failure to do so might mean that Defendant could try to involuntarily pay her off to avoid being sued on a class basis. *See id.* That motion, along with the corresponding motions to stay and for relief from briefing requirements, will be denied as moot.

The second motion was filed on June 20, 2018. (Docket #23). This too was rendered moot by the filing of the July 5 motion. The second motion will be denied as such.

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Though class certification should not be "a dress rehearsal for the trial on the merits," *id.*, there may be some overlap between merits and class issues, *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013).

Plaintiff has carried her burden of proof as to each requirement. First, based on Defendant's discovery responses, she estimates that the class would include 180 members. This is well above the minimum numerical threshold established in this Circuit. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement."). Further, Defendant does not contend that Plaintiff's proposed class might not satisfy the numerosity requirement, thus conceding the point. *Wojtas v. Cap. Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007).

Second, the questions of fact and law raised in this case are sufficiently common between Plaintiff and her proposed class members. Commonality is satisfied by even a single common question among the class members, where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011). Plaintiff's case presents the model of such common questions and dispositive answers. Defendant sent each of the class members a materially identical letter that is alleged to have violated the FDCPA and WCA in the same manner. Each of the class members' claims rises or falls in precisely the same manner. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("Common nuclei of fact are typically manifest where . . . the defendants

have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents.").

Defendant's sole counterargument rests on a threshold question of FDCPA liability. The FDCPA only applies to collection activity directed at debts incurred for "personal, family, or household purposes[.]" 15 U.S.C. § 1692(a)(3) & (5). Defendant says that the Court would need to inquire about the reasons each class member incurred their particular debt. Defendant is incorrect that this precludes certification. The class definition already excludes anyone whose debt was for a business or commercial purpose. Further, the determination of who should be included in the class—with a maximum class size of just 180 people—could be easily accomplished by a review of Defendant's own records. Finally, if the parties discovered a business debtor who slipped through that initial review, the person could be removed from the class at any time.

If Defendant's view were correct, then no FDCPA class actions would exist, because each one requires at least a minimal individualized assessment of the nature of each class member's debt. Defendant also accuses Plaintiff of failing to establish that her own debt was incurred for household purposes. This is a curious position, as her affidavit testimony says precisely that. (Docket #26 ¶ 4–5) (Plaintiff's credit account was used only for "purchasing personal and household goods and services," never for "any business purpose").

Third, for similar reasons, Plaintiff's claim is typical of the class. Plaintiff's claim is considered typical

> if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement

> is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citations and quotations omitted). Plaintiff was sent the same letter as the other class members and she maintains that it violated the law in precisely the same way.

Defendant points to a potential factual variation amongst the class members' claims. It asserts that only twelve of the 180 people who were sent the form letter at issue had accounts with Monroe & Main, Plaintiff's creditor. Defendant notes that different creditors allow it varying levels of settlement authority. Consequently, Defendant believes that the Court would be required to undertake an individual assessment of whether and how Defendant could have arrived at a settlement with an individual debtor in light of their particular creditor's settlement instructions.

Defendant's position rests on a misunderstanding of Plaintiff's claims and a failure to appreciate the testimony of its own corporate representative. Plaintiff does not claim that Defendant attempted to mislead her about its settlement authority with respect to any particular creditor. Rather, Plaintiff asserts that Defendant misled her and the class members about its own general settlement policies, namely about whether and when a settlement offer would expire. This view is confirmed by the testimony of Michael Martin, Director of Compliance for Defendant, who testified that Defendant's policy is to keep settlement offers open indefinitely, so long as the creditor did not change its settlement parameters. (Docket #47-2 at 44:20 to 46:23).

In Plaintiff's view, this contrast between Defendant's settlement policy and her interpretation of the word "promptly" makes the Letter misleading. Thus, Plaintiff's claim remains typical of the class, regardless of the particular settlement authority Defendant had on each of the 180 accounts at issue. Even if the parties discover "some factual variations" between Plaintiff's claims and those of the class members, all have "the same essential characteristics," and so typicality is satisfied. *Oshana*, 472 F.3d at 514.

Fourth, both Plaintiff and her counsel are adequate representatives for the class. Adequacy requires proof of three elements: "(1) the representative's interest cannot be contrary to those of the rest of the class, *see Amchem Prods. v. Windsor*, 521 U.S. 591, 625–29 (1997); (2) the class representative must be sufficiently interested in the case outcome, *see Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986); and (3) class counsel must be qualified, experienced, and generally able to conduct the case, *see Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977)." *Wheeler v. Midland Funding LLC*, Case No. 15-C-11152, 2018 WL 1920254, at *4 (N.D. Ill. Apr. 24, 2018); *see also Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993). Defendant does not question the qualifications of Plaintiff's counsel or their ability to manage a class action.

Instead, Defendant claims that Plaintiff has not provided sufficient evidence of her adequacy as the class representative. True enough, the only evidence comes from Plaintiff's affidavit testimony. (Docket #26). There, Plaintiff states that she has agreed to be the class representative, that she has been active in participating in this litigation and will continue to be, that she will appear at a deposition or trial, and that she is unaware of any conflicts between her and the class. This seems more than sufficient to the

Court. *Steffek v. Client Servs., Inc.*, Case No. 18-C-160, 2018 WL 3637536, at *2 (E.D. Wis. July 31, 2018) (the burden for establishing representative adequacy is not high). What other evidence of adequacy Defendant desires, it does not say, and it points to nothing which directly contradicts Plaintiff's testimony.

The only concrete observation Defendant makes is that Plaintiff has another pending putative class action in this District. *Deborah Al v. IC System Inc.*, Case No. 14-CV-1475-PP (E.D. Wis.). Defendant questions whether Plaintiff has "a propensity to FDCPA claims" and her ability to devote time to this case. (Docket #37 at 6). To the extent this is a jab at Plaintiff for being a "professional" litigator, it is meritless. The Court of Appeals sees no adequacy problem with people who have filed more than fifty consumer rights lawsuits. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Defendant offers nothing more than metaphysical doubt about Plaintiff's ability to manage two lawsuits (her other case has not progressed to the class certification stage).

With the prerequisites to class certification established, Plaintiff must now show that her proposed class action fits within one of the three types outlined in FRCP 23(b). She has selected the "superiority" class type, meaning that she must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Inquiries relevant to this question include

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* 23(b)(3)(A)–(D).

As discussed above, common issues easily predominate over individual ones in the proposed class. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[C]ommon issues need only predominate, not outnumber individual issues.") (quotation omitted). The answer to whether the Letter is misleading will determine the outcome of each class members' claim. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) ("[A] common question predominates over individual claims if 'a failure of proof on the [common question] would end the case' and the whole class 'will prevail or fail in unison.'") (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013)). Further, the Seventh Circuit finds that FDCPA class actions are generally an excellent avenue for enforcing the statute, as Defendant knows all too well:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.
>
> True, the FDCPA allows for individual recoveries of up to $1000 [(which is more than is usually obtained for individual class members)]. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of

individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

Defendant counters that many FDCPA cases are filed every year, asserting that "[t]here is no shortage of plaintiffs seeking to vindicate their rights under the FDCPA." (Docket #37 at 7). This observation has no bearing on whether, on these facts and with these parties, a class action is more appropriate than individual lawsuits. Here, there is no evidence that other potential class members have already sued Defendant for the statutory violations alleged in this case, suggesting that they either do not know about their potential cause of action, or lack the time or resources to retain an attorney. Further, with such a small potential class, it will not be difficult to manage this case as a class action. The Court concludes, then, that a class action is far superior to numerous individual actions in this instance. *See Steffek*, 2018 WL 3637536, at *3–4.

Plaintiff has carried her burden with respect to each required element for class certification. The Court will, therefore, grant her motion and certify her desired class.[2] The Court will also appoint her as class representative and her attorneys as class counsel. Though class certification is appropriate, there are still a number of loose ends as to class treatment for this case. On August 1, 2018, Plaintiff filed an expedited motion requesting that the Court rule on her motion for class certification prior to issuing a decision on the pending motions for summary judgment filed by each party. (Docket #49). Plaintiff states that a ruling on summary judgment prior to deciding class certification may render the class "fail-safe,"

---

[2]The Court will also grant the motions to seal which are related to the class certification briefing. (Docket #27, #32, and #51).

meaning that a potential class member would know which side has won on the merits of the case before deciding whether to join. *Id.*; *Costello v. BeavEx., Inc.*, 810 F.3d 1045, 1057-58 (7th Cir. 2016). It appears that the best practice is to decide class certification first, and if a class is certified, allow for the class members to opt in or out, and then address summary judgment. *See Thompson v. Ret. Plan of Employees of S.C. Johnson & Sons, Inc.*, 265 F.R.D. 405, 409–10 (E.D. Wis. 2010).

Defendant did not oppose this motion, and so the Court must assume it agrees with Plaintiff. The Court will, therefore, issue this decision on class certification and stay the pending summary judgment motions until the class-related procedures are completed. In that vein, the Court notes that Plaintiff has also not proposed any procedures for providing notice of this action to the class (though she indicated she would after the issuance of a decision on class certification). The Court will direct the parties to confer on the procedures necessary for managing the class and present them to the Court in the form of a stipulation. Upon receipt of the stipulation, the Court will determine whether the trial schedule in this matter needs to be altered to accommodate a notice period.

Accordingly,

**IT IS ORDERED** that Plaintiff's first motion for class certification, to stay, and for relief from briefing requirements (Docket #3) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's second motion for class certification (Docket #23) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's third motion for class certification (Docket #29) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the following class be and the same is hereby **CERTIFIED**: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt allegedly owed for personal, family or household purposes, (d) between December 13, 2016 and December 13, 2017, (e) that was not returned by the postal service;

**IT IS FURTHER ORDERED** that Plaintiff is appointed as class representative and her counsel are appointed as class counsel;

**IT IS FURTHER ORDERED** that Plaintiff's motions to seal related to the class certification briefing (Docket #27, #32, and #51) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion seeking the Court's ruling on class certification prior to a ruling on summary judgment (Docket #49) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the parties' motions for summary judgment (Docket #41 and #42) and related motions to seal (Docket #48, #57, #60, and #61) be and the same are hereby **STAYED** pending further order of the Court; and

**IT IS FURTHER ORDERED** that the parties confer and file a stipulation addressing the issues identified in this Order within fourteen (14) days.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge