# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DEBORAH AL,

        Plaintiff,

v.

VAN RU CREDIT CORPORATION,

        Defendant.

Case No. 17-CV-1738-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiff filed this class action on December 13, 2017. (Docket #1). She sues Defendant for sending her, and members of the putative class, allegedly misleading debt collection letters. *Id.* Plaintiff brings claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Wisconsin Consumer Act ("WCA"), Wis. Stat. §§ 421, 427 *et seq.* Each party has filed a motion for summary judgment. Defendant seeks dismissal of the entire case, (Docket #41), while Plaintiff requests judgment as to liability only, leaving the issue of damages for trial, (Docket #42). For the reasons explained below, both motions must be denied.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure ("FRCP") 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

The Seventh Circuit has provided additional direction in evaluating the viability of FDCPA claims. Such claims are assessed from the perspective of the "unsophisticated consumer." An unsophisticated consumer "may be uninformed, naïve, [and] trusting, but is not a dimwit, has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences[.]" *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citations and quotations omitted). Although unsophisticated consumers "may tend to read collection letters literally, [they] do[] not interpret them in a bizarre or idiosyncratic fashion." *Gruber v. Creditors' Protection Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014) (citations and quotations omitted). In the case of letter-based FDCPA violations, the court considers whether the subject letter is "confusing to a significant fraction of the population." *Id.* (quotation omitted).

3. **RELEVANT FACTS**

Plaintiff is an individual consumer and Defendant is a debt collection agency. At some point, Plaintiff incurred a debt to Monroe & Main ("M&M"), through which she had opened a store credit card. She apparently did not pay off the balance on the credit card. On March 10, 2017, Defendant mailed Plaintiff a collection letter seeking to recover the unpaid balance (the "Letter"). The Letter states, in pertinent part:



```
Creditor: Monroe & Main
Account #                          Balance
       36110                       462.31
                    SETTLEMENT OFFER
You can settle your account with the above client for less than the full amount you owe.
The balance you owe as of the date of this letter is $462.31. Presently, we are willing to accept $277.39 to settle your account,
provided that you act promptly. We are not obligated to renew this offer.
```

(Docket #1-1 at 2). The Letter is based on a form template that Defendant uses to send correspondence to many other consumers. Defendant's corporate representative, Michael Martins ("Martins"), testified that the Letter may be sent by Defendant at any point in the collection process if Defendant determines that it is appropriate. The Letter is not, for instance, exclusively used as a last-ditch attempt to obtain payment.

The Letter does not define the word "promptly" or set a date certain upon which the settlement offer would be renewed. In other words, the Letter implores the consumer to act promptly but does not actually tell the consumer when the settlement offer expires. Plaintiff claims to have been confused by the Letter with respect to when and whether the settlement offer would expire or be revoked.[1]

In fact, when directly asked what "promptly" meant, Martins said that he did not know. Defendant concedes that in reality, it would honor a payment of the settlement amount at any time, so long as the account had not been closed and the creditor had not changed Defendant's settlement

---

[1]Defendant attempts to dispute Plaintiff's assertion of confusion by stating it "has no knowledge or information to believe that [the Letter] confused Plaintiff[.]" (Docket #59 at 19). The information is stated directly, however, in Plaintiff's affidavit. (Docket #26). Defendant's putative dispute is frivolous and has been ignored. Defendant's counsel should take particular care to avoid such tactics in the future, as the Court has already warned them that this approach is unacceptable. *Riel v. Immediate Credit Recovery, Inc.*, No. 17-CV-440-JPS, 2018 WL 502659, at *1 (E.D. Wis. Jan. 22, 2018). If they ignore the Court's directives again, they can expect to be sanctioned.

authority to revoke the offer. In other words, the settlement offer would never expire unless the creditor reduced Defendant's settlement authority. Indeed, Martins had never heard of an instance where a consumer's attempt to pay the settlement amount was rejected as untimely.

Defendant maintains contracts with the various creditors for which it collects debts. Defendant's agreement with DM Services, the parent company for M&M, initially authorized Defendant to settle that company's debts for 80% of the original debt balance. That figure was later reduced to 60% sometime in 2015. Defendant states that its ability to accept a settlement amount is discretionary (so long as the amount is not below 60% of the debt). By "discretionary," Defendant means that it decides whether and when to send a settlement offer letter to a consumer.

DM Services recalled Plaintiff's account on March 30, 2017. Plaintiff asserts that at the time the Letter was sent to her, Defendant did not know that her account would soon be recalled or that its settlement authority might change. She believes that the same is true for all consumers who receive correspondence on the Letter's template. Defendant denies that it had any knowledge as to whether or when the account might be recalled.

4. ANALYSIS

Plaintiff states her claims against Defendant in four counts. Counts One through Three are FDCPA claims. In Count One, Plaintiff alleges that Defendant's failure to define "promptly" is misleading, as it does not clearly define when the settlement offer expires. (Docket #1 at 11). A consumer might mail in the settlement payment only to be told that the settlement offer had already expired. *Id.* at 11–12. Count Two contends that the Letter falsely implies that its settlement offer is made for a limited time, and thus the consumer must hurry to accept it. *Id.* at 12. Plaintiff says this

is false; Defendant could accept a settlement payment at any time. *Id.* In the same vein, Count Three asserts that the threat to revoke the offer is false, in that neither Defendant nor the creditor ever intended to revoke it. *Id.* Count Four is brought pursuant to the WCA. *Id.* Plaintiff alleges that because Defendant is a Wisconsin-licensed collection agency, its FDCPA-violative conduct also gives rise to WCA liability. *Id.* at 12–13.

To prove a claim that language in a collection letter is misleading or deceptive, the Court of Appeals has established three categories of cases:

> The first category includes cases in which the challenged language is "plainly and clearly not misleading." No extrinsic evidence is needed to show that the debt collector ought to prevail in such cases. *Lox*[, 689 F.3d at 822]. The second *Lox* category "includes debt collection language that is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer." *Id.* In such cases, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.*, quoting *Ruth* [*v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009)]. The third category is cases in which the challenged language is "plainly deceptive or misleading," such that no extrinsic evidence is required for the plaintiff to prevail. *Id.*

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 322–23 (7th Cir. 2016).

Each party argues that the Letter falls into the first or third categories, which would respectively entitle each to judgment as a matter of law. The Court finds, however, that the Letter's potential to confuse, or lack thereof, is not plain. Thus, when applying both the summary judgment and unsophisticated consumer standards to each party's motion, the Letter falls into the second category and it falls to a jury to evaluate the parties' arguments in light of the Letter's text and the other evidence in this case.

Indeed, despite the volume of FDCPA actions filed in district courts and the numerous dispositive motion opinions they spawn, resolution of a collection letter's allegedly confusing nature by a factfinder is meant to be the norm. *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686 (7th Cir. 2017); *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009).

The only hurdle Plaintiff must clear to reach a jury is the production of some extrinsic evidence to prove that an unsophisticated consumer might actually find the Letter's language confusing. *Janetos* suggests employing a consumer survey to carry this burden, and Defendant chides Plaintiff for failing to conduct such a survey for this case. However, a survey is not strictly required. A consumer plaintiff may simply "testify that they were misled, and if they are shown to be representative unsophisticated (or, *a fortiori*, sophisticated) consumers, the trier of fact may be able to infer from their testimony that the letter is misleading within the meaning of the [FDCPA]." *Muha*, 558 F.3d at 628. That is what Plaintiff has done here. *See* (Docket #26). While the lack of survey evidence may undermine Plaintiff's presentation to the jury, that is no concern for the Court. Plaintiff has met her burden of production and has raised a triable issue of fact as to whether the Letter was misleading or false in any manner.

A few ancillary legal issues remain. First, Defendant claims that the alleged misrepresentation of a settlement deadline was immaterial. The Seventh Circuit holds that "a false or misleading statement is only actionable under the FDCPA if it is material, . . . meaning that it has the ability to influence a consumer's decision." *Lox*, 689 F.3d at 826 (quotation omitted). The influence need not be enough to conclusively change the consumer's decision, but it must at least be "a factor in [their] decision-making process[.]" *Id.* at 827. This standard is easily met. The Letter is

potentially deceiving as to the most basic element of the parties' relationship—the terms of payment for the debt, namely the time in which to pay. Indeed, the very purpose of requesting "prompt" payment was to influence Plaintiff's decision to pay.

Second, Counts One and Three are presented pursuant to 15 U.S.C. § 1692e, which prohibits misleading communications by debt collectors, and 15 U.S.C. § 1692f, which proscribes unfair collection activity. (Docket #1 at 11–12). Section 1692f is viewed as a catch-all provision for improper collection activity not addressed by other FDCPA provisions, and its "prohibition on unfairness is as vague as they come." *Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013). With that in mind, courts are reluctant to allow a Section 1692f claim to proceed on the same facts which underlie an alleged violation of a more specific provision. *See Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 989 (W.D. Wis. 2015) (collecting cases).

Plaintiff claims that she should be allowed to proceed under both provisions because where Section 1692e requires the three-part *Janetos* analysis, Section 1692f does not. (Docket #54 at 23). The Court disagrees with her conclusion on two grounds. First, this is a legal distinction, and the import of the above cited cases is the *factual* similarity of Section 1692e and f claims; Plaintiff does not dispute that the claims cover the same factual territory. Second, Plaintiff's observation weighs *in favor* of disallowing the Section 1692f claim. It would be odd indeed for the Seventh Circuit to develop such a robust rubric for analyzing letter-based FDCPA claims, only to have it be easily sidestepped by lodging a claim under the near limitless purview of Section 1692f. The Section 1692f allegations of Counts One and Three will be dismissed.

Third, the WCA prohibits, *inter alia*, communicating with a consumer "with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass" and "[e]ngag[ing] in other conduct which can reasonably be expected to threaten or harass[.]" Wis. Stat. § 427.104(1)(g)–(h). Defendant asserts that for the same reasons the FDCPA claims must be dismissed, the Letter cannot be interpreted as threatening or harassing. (Docket #43 at 9–10). The Court concludes that because there are triable issues on the FDCPA claims, and Defendant has not shown that the WCA claim should be treated in a different fashion, the WCA claim will also survive to trial. *See* Wis. Admin. Code. § DFI-Bkg 74.16 (a regulation of the Wisconsin Department of Financial Institutions, tasked with regulation of collection agencies, which prohibits agencies from "[e]ngag[ing] in other conduct which can reasonably be expected to threaten or harass the debtor or a person related to the debtor including conduct which violates the [FDCPA].").

The final issue is Plaintiff's request for dismissal of Defendant's bona fide error defense. The FDCPA is generally applied as a strict liability statute. The only way to avoid liability on an intent basis is for a collector to show "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). This defense protects only against mistakes of fact, such as accidentally sending a letter with an incorrect debt balance or to the wrong consumer. It does not apply to mistakes of law. *Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492, 498 (7th Cir. 2017). Defendant has not claimed that it unintentionally sent the Letter to Plaintiff, or that inclusion of the word "promptly" was a typographical error. Rather, it simply asserts that it did not mean to violate

the FDCPA. (Docket #58 at 12–13). This use of the bona fide error defense is precisely what *Oliva* forbids. The defense will stand dismissed.

**5.     CONCLUSION**

While most of the material facts of this case are undisputed, the critical few upon which Plaintiff's claims turn—how to interpret the language of the Letter—are not. In other words, a reasonable jury could find in favor of either party on the facts presented. The Court must, therefore, largely deny both parties' motions for summary judgment and leave it to a jury to resolve this matter. The Court will also grant the parties' various motions to seal.[2]

Accordingly,

**IT IS ORDERED** that the parties' motions for summary judgment (Docket #41 and #42) be and the same are hereby **GRANTED in part** and **DENIED in part** in accordance with the terms of this Order; and

**IT IS FURTHER ORDERED** that the parties' motions to seal (Docket #48, #57, #60, and #61) be and the same are hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 14th day of January, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

[2]The parties bicker about the sealing of various documents in an exchange of letters filed in August 2018. (Docket #52 and #53). Letters are not an appropriate means of litigating issues in this branch of the Court. The letters have been duly ignored. Any issues with the confidentiality of documents will be addressed at trial.